IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN A. SCHREIBEIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  04-969 |
| RETIREMENT PLAN FOR EMPLOYEES OF | ) |
| DUQUESNE LIGHT COMPANY, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION
## AND
## ORDER OF COURT

_____Plaintiff, Kathryn A. Schreibeis ("Plaintiff" or "Schreibeis"), initiated this action on June 29, 2004, alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendants Retirement Plan for Employees of Duquesne Light Company ("Plan"), Administrative Committee of the Plan (collectively "Plan Defendants"), and Concentra Medical Centers, L.L.C. ("Concentra").  Count I of the Complaint asserts an action for unlawful denial of disability retirement benefits against the Plan Defendants, and Count II asserts a claim for breach of fiduciary duty against Concentra.

Pending before the Court are Cross-Motions for Summary Judgment filed by Plaintiff (Docket No. 25) and the Plan Defendants (Docket No. 19).  Concentra also has filed a Motion for Summary Judgment against Plaintiff.  (Docket No. 22).  After

careful consideration of the parties' submissions and for the reasons set forth below, Concentra's Motion is granted, the Plan Defendants' Motion is granted in part and denied in part, and Plaintiff's Motion is granted in part and the matter is remanded to the Plan Administrator for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed.[1]

Defendant Retirement Plan for Employees of Duquesne Light Company ("Plan") is an employee pension benefit plan existing for the exclusive purpose of providing retirement pension benefits to current and former employees of Duquesne Light Company ("Duquesne Light"). The Plan is maintained and administrated pursuant to a written document ("Plan Document"), amended and restated effective April 1, 2001.[2] Prior to January 1, 2002, the Plan was administrated by the Administrative Committee of the Retirement Plan for Employees of Duquesne Light Company, pursuant to Section 8.010 of the Plan Document. Plan 0296. According to the Plan, the Administrative Committee ceased to exist as of January 1, 2002. An amendment to the Plan Document indicates that since January 1, 2002, Duquesne Light has

---

[1] The Plan Defendants failed to file a separate concise statement of material facts as required by Local Rule 56.1. After reviewing the submissions of the parties, however, I find that the material facts appear to be undisputed, and the parties agree on the contents of the administrative record. Thus, although the Plan Defendants' failure is inexcusable, I will not require them to file a separate statement of facts at this late stage.

[2] Both Plaintiff and the Plan Defendants have submitted a copy of the Plan Document in support of their respective Motions for Summary Judgment. See Docket No. 19, Ex. B to Affidavit of Clare E. Browne ("Browne Aff."); Docket No. 28, Ex. 2. The parties also have supplied identical copies of the administrative record in this case. See Docket No. 19, Ex. A to Browne Aff.; Docket No. 28, Ex. 1. Both the Plan Document and the Administrative Record are labeled with Bates numbers (e.g., "Plan 0001"). The parties cite to the Bates numbers in their briefs, and I do the same here.

served as the named fiduciary and Plan Administrator.  Plan 0331-0332.

Plaintiff began employment with Duquesne Light Company ("Duquesne Light") on October 29, 1979.  Plaintiff sustained a work-related shoulder injury in or around November 1998.  Her last day of work was November 19, 1999, and her official date of termination was October 30, 2000.

In or about May, 2002, Plaintiff filed an application with the Plan Administrator for a disability retirement benefit.  To qualify for a disability retirement benefit under the Plan, a participant must have completed at least ten years of vesting service and become "totally and permanently disabled" while an employee and prior to attainment of normal retirement age.  Plan 0261.  As defined in the Plan Document, "totally and permanently disabled" means:

> that a physical or mental condition renders a Participant disabled to the extent that (i) the Participant's physician certifies, in the manner prescribed by the Plan Administrator, that the Participant is permanently and totally disabled, (ii) the Participant is found by a medical examiner selected by the Plan Administrator to be totally, and presumably, permanently disabled, and (iii) the Participant is eligible for and receives disability benefits under the Social Security Act.

Plan 0254 (Plan Document § 1.480).

On or about January 24, 2002, the Social Security Administration issued a decision finding that Plaintiff was disabled within the meaning of the Social Security Act as of November 19, 1999, and that she was entitled to disability insurance benefits.  Plan 0046-0059.  Plaintiff provided the Plan Administrator with notice of her Social Security award in conjunction with her application for disability

3

retirement benefits. Plaintiff's primary care physician, William S. Zillweger, M.D., also certified on the appropriate form ("Physician's Report") that he had examined Plaintiff and that Plaintiff became totally and permanently disabled on or about November 19, 1999.  Plan 0008.  Dr. Zillweger described Plaintiff's diagnosis as "history of stage III breast carcinoma, status post mastectomy. Shoulder impingement."  Id.[3]

On or about June 13, 2002, the Plan Administrator sent the Physician's Report and other information to Paul Seiferth, M.D., requesting that he review the information and indicate on the Physician's Report whether he agreed or disagreed with Dr. Zillweger's opinion.  Plan 0010.  On or about June 18, 2002, Dr. Seiferth checked a box on the Physician's Report indicating that he disagreed that Plaintiff was totally and permanently disabled.  Plan 0008.

Clare Browne, Director, Qualified Plans for Duquesne Light, sent Plaintiff a letter dated July 17, 2002 indicating that Plaintiff's application for a disability retirement benefit had been denied.  The letter informed Plaintiff that "[a]lthough approved for disability benefits under the Social Security Act and determined disabled by your physician on the same date, November 19, 1999, the Company Physician does not agree that your disability is total and permanent based on the information provided by you."  Plan 0038.  The letter further explained that because the Company Physician did not agree that Plaintiff's disability was total and

---

[3]  The medical records contained in the Administrative Record indicate that Plaintiff was diagnosed with breast cancer in May 2000, over six months after her last day of work at Duquense Light.  Plan 0089-0090; 0160-0161.

4

permanent, she did not qualify as "totally and permanently disabled" as defined by the Plan.  Id.  The letter concluded by informing Plaintiff that she had a period of 180 days to appeal the denial of her claim; that she could submit written documents, comments, records and other information in support of her appeal; and that she would be provided, upon written request, free and reasonable access to any other information relevant to her appeal.  Id.

On or about August 1, 2002, Plaintiff appealed the Plan Administrator's initial claim determination.  Plaintiff's appeal letter stated that Dr. Zillweger would be "sending a letter under separate cover" and that she also had "a rather large packet of medical records and social security paperwork to be forwarded if needed."  Plan 0039. On or about August 14, 2002, Browne wrote to Plaintiff indicating that she had received Plaintiff's appeal request and stating that "[w]e will await the letter from Dr. Zillweger and other documents you will be sending that you mentioned in your August 1, 2002 letter to support your appeal."  Plan 0042.

Plaintiff forwarded Browne her supplemental medical documentation with a letter dated August 21, 2002.  At the conclusion of her letter, Plaintiff indicated that "[a]s I understand, Dr. Zillweger should be forwarding his letter shortly."  Plan 0045. Browne then directed that the entire administrative record (as it then-existed) be provided to Dr. Seiferth to be considered in his determination whether Plaintiff was totally and permanently disabled.  Browne Aff. ¶ 17.

In an e-mail to Browne dated August 30, 2002, Dr. Seiferth indicated that "[u]pon review of supplemental medical records, I find no supporting evidence to

reverse the previous decision of 'not concurring with disability retirement.' Decision: I do not concur with granting disability retirement to Kathryn Schreibeis." Plan 0228. In a letter dated September 4, 2002, Browne notified Plaintiff that the Plan Administrator had denied her appeal. The letter explained that "[t]he physician selected by the Plan Administrator has reviewed the additional medical documentation, as requested by your attorney and he does not confirm Dr. Zillweger's conclusion that you are Totally and Permanently Disabled." Plan 0229.

On or about September 10, 2002, Plaintiff sent a letter to the Plan Administrator questioning how the Plan physician could have rendered a decision without having Dr. Zillweger's letter. Plaintiff indicated that as of September 9, 2002, Dr. Zillweger had not yet sent the letter. The Plan Defendants did not respond.

On June 29, 2004, Plaintiff filed her Complaint against Defendants in this Court. (Docket No. 1). The Plan Defendants answered the Complaint on August 24, 2004 (Docket No. 3). On September 20, 2004, Concentra filed a Motion to Dismiss Count II of the Complaint (Docket No. 7). I denied the Motion to Dismiss on October 27, 2004, (Docket No. 12), after which Concentra filed its Answer (Docket No. 13). On March 21, 2004, the parties filed the instant Motions for Summary Judgment and supporting briefs. The Motions are now ripe for review.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

6

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56

mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against the party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986).

  In considering a motion for summary judgment, this Court must examine the

facts in a light most favorable to the party opposing the motion.  <u>Int'l Raw Materials,</u>

<u>Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the

moving party to demonstrate that the evidence creates no genuine issue of

material fact.  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987).   The

dispute is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986).  A fact is material when it might affect the outcome of the suit under the

governing law.  <u>Id</u>.  Where the nonmoving party will bear the burden of proof at

trial, the party moving for summary judgment may meet its burden by showing that

the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial.  <u>Celotex</u>, 477 U.S. at

322. Once the moving party satisfies its burden, the burden shifts to the nonmoving

party, who must go beyond its pleadings, and designate specific facts by the use of

affidavits, depositions, admissions, or answers to interrogatories showing that there

is a genuine issue for trial.  <u>Id</u>. at 324.  Summary judgment must therefore be

granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).


### III.  LEGAL ANALYSIS

### A.  Claim for Denial of Benefits Against Plan Defendants

#### 1.  Administrative Committee as Defendant

Before reaching the merits of Plaintiff's denial of benefits claim, I first address the Plan Defendants' argument that the Administrative Committee is an improper defendant and thus should be dismissed as a party.  This portion of Defendants' Motion for Summary Judgment is granted.  The undisputed evidence shows that as of January 1, 2002 – prior to the date Plaintiff filed her application for benefits – the Plan was amended to remove the Administrative Committee as the Plan Administrator and replace it with the Company.  Plan 0331-0332 (First Amendment to the Plan); Browne Aff. ¶ 2.  After January 1, 2002, the Administrative Committee ceased to exist.  Browne Aff. ¶ 2.  Because the Administrative Committee is a non-existent and, therefore, improper party, the claims against it are dismissed.  This ruling in no way affects the Plan's status as Defendant or its liability, if any, with respect to Count I of Plaintiff's Complaint.  Indeed, the Plan admits that it "is and remains the only proper Defendant and that is all that is necessary."  Plan

Defendants' Surreply (Docket No. 38) at 3.

## 2. <u>ERISA Standard of Review</u>

"ERISA does not set out the standard of review for an action brought under §1132(a)(1)(B) by a participant alleging that he has been denied benefits to which he is entitled under a covered plan." <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997).  Yet some guidance is available.

> [I]n <u>Firestone Tire & Rubber Co. v. Bruch</u>, the Supreme Court addressed the question of the appropriate standard for actions challenging "denials of benefits based on plan interpretations."  489 U.S. 101, 108, 109 S. Ct. 948, 953, 103 L. Ed.2d 80 (1989).  The Court held that "a denial of benefits challenged under §1132(a)(1)(B) is to be under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Id.</u>  at 115, 109 S. Ct. at 956-57.  Where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be disturbed if reasonable."

<u>Mitchell</u>,113 F.3d at 437 (footnote omitted).  In other words, the <u>de novo</u> standard operates as a default.  <u>Id</u>.  Where the plan document has conferred discretionary authority on the plan administrator to make certain determinations, my review is limited to whether a specific determination was arbitrary and capricious. <u>Id.</u> at 439; <u>Abnathya v. Hoffman-LaRoche, Inc.</u>, 2 F.3d 40, 41 (3d Cir. 1993).  The arbitrary and capricious standard applies to the plan administrator's interpretation of the terms of the plan as well as any factual determinations regarding a participant's eligibility for and entitlement to plan benefits.  <u>Mitchell</u>, 113 F.3d at 438-39.

Here, the parties agree that the Plan vests with the Plan Administrator the

discretion to determine eligibility for benefits.  Plan 0296, 0297-0298 (Plan Document §§ 8.010, 8.040).  Accordingly, I may overturn a decision of the Plan Administrator only if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 384 (3d Cir. 2003).  "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'"  Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Daniels v. Anchor Hocking Corp., 758 F. Supp. 326, 331 (W.D. Pa. 1991)).  I am not free to substitute my own judgment for that of the Plan Administrator in determining eligibility for plan benefits.  Lasser, 344 F.3d at 384.  With this highly deferential standard in mind, I turn to the merits of the parties' cross-motions for summary judgment on this claim.

### 3. **Denial of Plaintiff's Benefits**

The primary issue before me with respect to Count I of Plaintiff's Complaint is whether the Plan's decision to deny Plaintiff benefits was arbitrary and capricious. When reviewing a denial of benefits under the arbitrary and capricious standard, I may consider only the evidence available to the Plan Administrator at the time the decision in question was made.  Abnathya, 2 F.3d at 48 n.8; Mitchell, 113 F.3d at 440; Stout v. Bethlehem Steel Corp., 957 F. Supp. 673, 691 (E.D. Pa. 1997).  The burden is on Plaintiff to demonstrate that the denial of benefits was arbitrary and capricious. Stout, 957 F. Supp. at 691.

As an initial matter, I disagree with Plaintiff to the extent she argues that the denial of benefits was arbitrary and capricious simply because her physician and the

10

Social Security Administration ("SSA") found her to be disabled.  To so conclude would render the Plan's definition of disability – which requires that the participant's physician, the SSA, and a physician selected by the Plan Administrator find that the participant is totally and permanently disabled – meaningless.  The plain language of the Plan expressly contemplates that there will be situations where the Plan-selected physician legitimately does not agree that a participant is disabled.  In such situations, the participant is not entitled to disability retirement benefits.  Moreover, it is well-established that, unless otherwise provided in the Plan, the opinions of a treating physician and/or the SSA are not entitled to special deference in ERISA cases.  See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003) ("[P]lan administrators are not obliged to accord special deference to the opinions of treating physicians."); Pokol v. E.I. Du Pont De Nemours & Co., 963 F. Supp. 1361, 1380 (D.N.J. 1997) ("[I]t is not inherently contradictory to permit an individual to recover benefits pursuant to the Social Security Act while being denied benefits pursuant to a private ERISA benefit plan."); Sollon v. Ohio Cas. Ins. Co., No. Civ. A. 02-1632, 2005 WL 2768948, at *21 (W.D. Pa. Oct. 25, 2005).

I also disagree that the fact that Dr. Seiferth did not physically examine Plaintiff before determining she was not disabled rendered the denial of benefits arbitrary and capricious.  Nothing in ERISA or the Plan Document requires a physical examination or prohibits benefit plans or plan administrators from basing disability determinations on a review of medical evidence supplied by the participant.  See, e.g., Marcum v. Zimmer, 887 F. Supp. 891, 897 (S.D. W. Va. 1995) (upholding denial of

benefits based on non-examining physician's review of medical evidence); <u>Sollon</u>, 2005 WL 2768948, at *20 (citing cases and noting that a plan administrator has no duty under ERISA to gather information in addition to that submitted with the claim).

I do agree with Plaintiff, however, that her claim was decided without adequate notice and a reasonable opportunity for a "full and fair review."  Section 503 of ERISA, 29 U.S.C. § 1133, requires every employee benefit plan to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  The Department of Labor regulations implementing this section further provide, among other things, that:

> . . . the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures–

> . . . (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

> . . . (iv) Provide for a review that takes into account all comments, documents, records, and other information

12

> submitted by the claimant relating to the claim, without
> regard to whether such information was submitted or
> considered in the initial benefit determination.

29 C.F.R. § 2560.503-1(h)(2); see also id. § 2560.503-1(g)(1) (requiring that notification set forth "the specific reason or reasons for the adverse determination"). The Plan failed to comply with these provisions in at least two ways. First, the Plan Administrator acted unreasonably in deciding Plaintiff's appeal without waiting for a promised letter from her treating physician, Dr. Zillweger, in support of the appeal. Second, the Plan acted arbitrarily and capriciously by failing to provide Plaintiff with the specific reasons for her claim denial. I will address each of these issues in turn.

### a. Dr. Zillweger's Letter

As set forth above, ERISA requires that plans provide claimants the opportunity to submit written comments, documents, records, and other information relating to a claim for benefits. Here, although the Plan initially agreed in writing to await a letter from Dr. Zillweger in support of Plaintiff's appeal, it subsequently determined her claim less than two weeks later without having received the letter. The Plan never informed Plaintiff that it was moving ahead with her appeal without the letter and never responded to Plaintiff's post-appeal inquiries regarding the situation. It was unreasonable for the Plan to assume after so short a period that the letter was not forthcoming and/or to proceed without at least notifying Plaintiff.

The Plan now argues that Dr. Zillweger's letter would have had "no impact" on

the appeal decision.  I am at a loss as to how the Plan can make such an assertion without knowing what the letter would have contained.  The Affidavit paragraph Defendant cites in support of its argument merely references the Plan's contention that it had no authority under language of the Plan to grant Plaintiff benefits once Dr. Seiferth disagreed that Plaintiff was not disabled.  <u>See</u> Browne Aff. ¶ 4.  There is no telling, however, whether Dr. Seiferth's conclusion might have been different if he had the benefit of Dr. Zillweger's letter during his review.  Defendant's argument that the letter was immaterial because Dr. Seiferth already had Dr. Zillweger's April 2002 certification that Plaintiff was totally and permanently disabled is likewise misplaced.  The administrative record consistently indicates that although Dr. Seiferth was aware of Dr. Zillweger's opinion, he found insufficient evidence to support that conclusion.  Again, Dr. Seiferth's decision might have been different if he had more from Dr. Zillweger than his conclusory certification.[4]

Finally, the Plan faults Plaintiff for never sending the promised letter even after her appeal had been decided.  If she had, the Plan submits, it could have reviewed the letter. This argument is specious.  Plaintiff had no obligation to supply Dr. Seiferth's letter once the Plan denied her appeal.  If anything, Plaintiff took affirmative action by promptly writing to the Plan after her appeal was denied

---

[4] The Plan's Brief also suggests that although the Plan "initially agreed to wait for Dr. Zillweger's statement," it no longer felt the need to do so after Plaintiff submitted medical documentation containing some records from Dr. Zillweger.  Plan Defs.' Br. in Supp. at 14.  This argument is meritless.  The Plan's letter to Plaintiff stated that it would await both the additional documentation <u>and</u> Dr. Zillweger's letter.  In addition, Plaintiff expressly indicated in her cover letter enclosing the medical documentation at issue that Dr. Zillweger's letter was not included and would arrive under separate cover.  Plan 0043.

expressing her confusion and questioning the Plan's decision to proceed without the letter. Plan 0230. The Plan, however, never responded or otherwise indicated to Plaintiff that it would consider the letter post-appeal.

In short, it is not this Court's position to speculate *post hoc* as to what Dr. Zillweger's letter would have contained and what effect, if any, the letter would have had on Plaintiff's appeal. Rather, what is relevant is that the Plan's failure to await the letter after promising Plaintiff otherwise denied Plaintiff a reasonable opportunity for full and fair review on the administrative level.

### b. Specific Reasons for Claim Denial

As the Court of Appeals for the Third Circuit has recognized:

> To afford a plan participant whose claim has been denied a reasonable opportunity for full and fair review, the plan's fiduciary must [among other things,] . . . notify the participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied and the specific reasons therefor. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence.

Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., 715 F.2d 853, 857-58 (3d Cir. 1983). The Court of Appeals has further explained that "[o]ne of the main purposes for the requirement that the denial letter provide specific reasons 'is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.'" Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 178 n.8 (3d Cir. 2001) (quoting

DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999)).

Here, although the denial of Plaintiff's claim stemmed from the disagreement of Dr. Seiferth – whom the Plan selected and held out as the "Company Physician" – that Plaintiff was totally and permanently disabled, the Plan never supplied Plaintiff with any of the reasons behind Dr. Seiferth's decision either initially or on appeal.  Indeed, no such reasons appear anywhere in the administrative record.

The Plan argues that it was not required to inquire into or provide Plaintiff with Dr. Seiferth's reasons because the Plan Administrator's discretion was limited to whether the three sources listed in the Plan Document (i.e., Plaintiff's doctor, the Plan Doctor, and the SSA) agreed that Plaintiff was disabled, regardless of the reason. I disagree.  Although the Plan language might not permit the Plan to grant benefits in the face of a denial by the Plan-selected physician, the Plan should at least have provided the reasons for the physician's decision to Plaintiff so that she could prepare an informed and meaningful appeal.  See Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 158 (4th Cir. 1993) ("Plan administrators may not evade their responsibility under ERISA [to communicate the specific reasons for claim denial] by contracting to third parties the obligations they have under ERISA.").  In so holding, I find it significant that the Plan did not limit Plaintiff's appeal to the issue of whether or not the Plan Administrator correctly decided that only two out of the three required sources opined that Plaintiff was disabled.  Rather, the Plan allowed Plaintiff to submit medical documentation and other evidence in appeal of Dr. Seiferth's decision itself.  Without any guidance as to the reasons for that decision,

Plaintiff could not prepare adequately for further review of her claim.  See id.

The Plan further argues that, in any event, there is sufficient evidence in the administrative record to support Dr. Seiferth's conclusion that Plaintiff was not disabled and, therefore, the claim denial was not arbitrary and capricious.  In particular, the Plan makes much of the fact that the record contains a letter from Plaintiff's shoulder surgeon, Alan Klein, M.D., indicating that Dr. Klein had reviewed a surveillance video of Plaintiff and concluded that, based on the video (which depicted Plaintiff lifting a bale of hay, using a rake and shovel, and spreading a tarp), Plaintiff "is capable of performing some activities and therefore should not be considered permanently disabled in regard to her shoulders."  Plan 0041, 0224. Again, I disagree.  Although Dr. Klein's letter might constitute substantial evidence that Plaintiff is not disabled, it is impossible to tell from the administrative record whether Dr. Seiferth even reviewed that letter, let alone whether it formed the basis for his opinion.  In addition, there is absolutely no indication in the record that the Plan ever made Plaintiff aware of Dr. Klein's letter prior to this lawsuit or in any way informed her that her appeal would be decided based upon evidence other than the documentation she provided.  In so doing (or not doing), the Plan deprived Plaintiff of the chance to rebut Dr. Klein's letter and to pursue a meaningful appeal. See Grossmuller, 715 F.2d at 858 n.5 ("[T]o be 'full and fair,' the review must provide a claimant with knowledge of the opposing parties' contentions and a reasonable opportunity to meet them.").

In addition to the above reasons, it is improper for me even to consider such

*post hoc* rationales for Dr. Seiferth's conclusion that Plaintiff was not disabled.  As the Court of Appeals for the Third Circuit aptly explained in <u>Skretvedt</u>:

> We note in this regard our agreement with the policy concerns identified in <u>University Hospitals of Cleveland v. Emerson Electric Co.</u>, 202 F.3d 839 (6th Cir.2000), where the court held that it would not defer to post hoc rationales for denying benefits claims generated for the purpose of litigation by ERISA plan administrators when those rationales did not appear in the denial letters sent to the benefits claimants or in the administrative record.  The court observed that:
>
> > it strikes us as problematic to, on one hand, recognize an administrator's discretion to interpret a plan by applying a deferential "arbitrary and capricious" standard of review, yet, on the other hand, allow the administrator to "shore up" a decision after-the-fact by testifying as to the "true" basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative post hoc arguments that can survive deferential review. . . . To depart from the administrative record in this fashion would, in our view, invite more terse and conclusory decisions from plan administrators, leaving room for them – or, worse yet, federal judges – to brainstorm and invent various proposed "rational bases" when their decisions are challenged in ensuing litigation.

<u>Id.</u> at 848  n.7.

268 F.3d at 178 n.8.[5]  Because neither the Plan nor Dr. Seiferth cited Dr. Klein's letter as a reason for benefit denial in the administrative record, I decline to do so now.

For all the reasons set forth above, I grant Plaintiff's Motion for Summary Judgment against the Plan to the extent it alleges that the Plan deprived Plaintiff of a full and fair review of her benefits claim in violation of ERISA section 503. Plaintiff's Motion is denied, however, to the extent it requests that I order the award of disability retirement benefits.  The remedy for a violation of section 503 is not to award benefits, but "to remand to the plan administrator so the claimant gets the benefit of a full and fair review."  Syed v. Hercules, Inc., 214 F.3d 155, 162 (3d Cir. 2000).  Accordingly, I will remand this action to the Plan Administrator with instructions to provide Plaintiff with a full and fair review of her claim.

## B.  Breach of Fiduciary Duty Claim Against Concentra

Concentra has moved for summary judgment as to Plaintiff's breach of fiduciary duty claim (Count II) on the grounds that, under the law and the undisputed facts, Concentra is not a fiduciary as defined by ERISA.  I agree that Plaintiff has not pointed to any evidence to create a genuine issue of material fact on this issue and that Concentra is entitled to judgment as a matter of law.

In this case, Concentra is not a named fiduciary or the Plan Administrator. Section 3(21)(A) of ERISA defines three situations in which a person who is not a named fiduciary or plan administrator can assume a fiduciary duty.  29 U.S.C.

---

[5]  Although the Court of Appeals decided Skretvedt on other grounds and thus did not reach the question of whether or not *post hoc* rationales ever should be credited, it specifically indicated its agreement with the above-quoted policy concerns.  Id. at 178 n.8.

§ 1002(21)(A).  They are:

> (i) if the person exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

> (ii) if the person renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

> (iii) if the person has any discretionary authority or discretionary responsibility in the administration of such plan.

Id.

Plaintiff does not take issue with the second of these subsections.  Instead, Plaintiff asserts that Concentra had discretionary authority over the Plan. Specifically, Plaintiff alleges that Dr. Seiferth, the physician selected by the Plan Administrator to review Plaintiff's case, was an agent of Concentra and exerted independent discretion in rendering his determination that Plaintiff was not totally and permanently disabled.   Pl.'s Opp. Br. at 4-5.   Plaintiff contends that this independent determination caused the Plan Administrator to deny Plaintiff's claim for disability retirement benefits and, therefore, that Concentra through Dr. Seiferth acted in a discretionary manner directly affecting the administration of the Plan, *i.e.*, directly impacting the determination of Plaintiff's eligibility for benefits. Id.  The evidence does not support Plaintiff's argument.

Even if Dr. Seiferth had acted in a discretionary manner directly affecting the

20

administration of the Plan (which he did not), there is no evidence that Dr. Seiferth acted on behalf of Concentra.  As an initial matter, Concentra has submitted an affidavit and documentary evidence showing that, contrary to the allegations in Plaintiff's Complaint, Dr. Seiferth was not an employee of Concentra.  Rather, Dr. Seiferth was employed by Occupational Health Centers of the Southwest, P.A. ("OHCS").  See Concentra's App. Ex. A (Affidavit of John T. Berry ("Berry Aff.")) and Ex. B (Physician Services Agreement between OHCS and Dr. Seiferth) (Docket No. 23).

In response, Plaintiff argues that the evidence shows that Dr. Seiferth nevertheless acted as an agent for Concentra.  I disagree.  According to the Professional Services Agreement between Concentra and OHCS attached to Concentra's Motion, Concentra owns and operates occupational health care facilities at various locations in Pennsylvania.  Concentra's App. Ex. C.  As set forth in the Agreement, OHCS contracted with Concentra to provide professional medical services at Concentra's health care facilities.  Id.  The Professional Services Agreement specifically states that:

> [OHCS] and [OHCS]'s employees will be regarded as independent contractors of Concentra for all purposes, and shall represent themselves as such to third parties. This Agreement shall not make [OHCS] or any employee of [OHCS] an agent of Concentra, and neither [OHCS] nor its employees shall bind Concentra or transact business in Concentra's name, or make representations or commitments on Concentra's behalf, without the prior specific approval of Concentra.

Concentra App. Ex. C, ¶ 1 (emphasis added); see also id.  ¶ 4(a) ("The rendition of all

professional services, including, but not limited to, diagnosis, treatment and the prescription of medicine and drugs, and the supervision and preparation of medical records and reports shall be the sole responsibility of OHCS. Concentra shall have no authority whatsoever with respect to such activities."). Based on this language, neither OHCS nor Dr. Seiferth, as an employee of OHCS, had actual authority to act as an agent for Concentra, without specific prior approval from Concentra. In addition, there is absolutely no evidence that Concentra ever specifically approved OHCS or Dr. Seiferth to act on its behalf. There also is no evidence of any contractual relationship of any kind between Concentra and the Plan or Plan Administrator.

The only evidence to which Plaintiff cites in support of her argument that Dr. Seiferth had actual or apparent authority to act as an agent of Concentra is that Dr. Seiferth's e-mail address was "Paul_Seiferth@concentra.com" and that the Plan's initial letter to Dr. Seiferth was addressed to Dr. Seiferth's address at Concentra. This evidence is simply insufficient to show an agency relationship. At most, this information shows the location at which Dr. Seiferth could be reached.

Even if Concentra were a service provider who made recommendations to the Plan Administrator regarding medical issues, Plaintiff has not pointed to any evidence that Concentra acted as a fiduciary of the Plan within the meaning of section 3(21)(A) of ERISA. As Concentra correctly notes, it is well-established that parties who render services (including professional services) or who offer and sell products to a retirement plan, but do not control the plan, generally are not fiduciaries under ERISA. See Fechter v. Connecticut Gen. Life Ins. Co., 800 F. Supp.

182, 197 (E.D. Pa. 1992); <u>Assocs. in Adolescent Psychiatry v. Home Life Ins. Co.</u>, 941 F.2d 561, 568-70 (7th Cir. 1991); <u>Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse</u>, 879 F.2d 1146, 1150-51 (3d Cir. 1989).  Applying this principle, courts have specifically held that service providers who make recommendations to a plan or plan administrator, including recommendations regarding medical issues, are not ERISA fiduciaries.  <u>See, e.g.</u>, <u>Crocco v. Xerox Corp.</u>, 956 F. Supp. 129 (D. Conn. 1997), <u>rev'd in part on other grounds</u>, 137 F.3d 105 (2d Cir. 1998); <u>Colleton Regional Hosp. v. MRS Med. Review Sys., Inc.</u> 866 F. Supp. 896 (D.S.C. 1994).

Here, the evidence at most shows that Dr. Seiferth reviewed certain medical documentation and opined that Plaintiff's disability was not total and permanent. There is no evidence that Dr. Seiferth or Concentra exercised any discretionary authority or control over the Plan's management or Plaintiff's ultimate entitlement to benefits.  Indeed, the Plan admits that the Plan Administrator has the full discretionary authority to interpret the terms of the Plan and make all factual determinations regarding the eligibility and entitlement to the Plan's benefits.  Plan Defs.' Br. (Docket No. 20) at 9.  For this reason as well, Concentra's Motion for Summary Judgment is granted.

### IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Plan Defendants' Motion for Summary Judgment is granted to the extent it seeks to dismiss the Administrative Committee as a defendant in this case and is denied in all other respects.  Plaintiff's Motion for Summary Judgment against the Plan is granted except to the extent Plaintiff

requests as a remedy an award of disability retirement benefits in her favor. Instead, this case is remanded to the Plan Administrator for a full and fair review in accordance with this Opinion, the Plan Document, and ERISA.  Concentra's Motion for Summary Judgment is granted.

******************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHRYN A. SCHREIBEIS,                          )
                                                )
            Plaintiff,                          )
                                                )
   -vs-                                         )
                                                  Civil Action No.  04-969
RETIREMENT PLAN FOR EMPLOYEES OF                )
DUQUESNE LIGHT COMPANY, et al.,                 )
                                                )
                                                )
            Defendants.                         )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **14th** day of December, 2005, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that the pending Motions for Summary Judgment are GRANTED in part and DENIED in part as follows:

1.  Defendant Concentra Medical Centers, L.L.C.'s ("Concentra") Motion for Summary Judgment (Docket No. 22) is GRANTED and Concentra is dismissed as a Defendant in this action.

2.  The Motion for Summary Judgment filed by Defendants Retirement Plan for Employees of Duquesne Light Company and the Administrative Committee of the Plan ("Administrative Committee") (Docket No. 19) is GRANTED only to the extent that it seeks to dismiss the Administrative Committee as a Defendant in this case. The Administrative Committee is hereby dismissed as a Defendant in this action.  The

25

Motion is DENIED in all other respects.

     3.  Plaintiff's Motion for Summary Judgment (Docket No. 25) is DENIED to the extent it seeks an award of disability retirement benefits.  Plaintiff's Motion is GRANTED in all other respects, and this case is remanded to the Plan Administrator for further proceedings in accordance with the Opinion accompanying this Order.

     4.  The Clerk of Court is hereby directed to mark this case "CLOSED" _forthwith_.


BY THE COURT:




/S/  Donetta W. Ambrose

 Donetta W. Ambrose,
Chief U. S. District Judge


26